**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**
        **Plaintiff,**

*ex rel.*

**WILLIAM TURNER,**
        **Relator,**               No. 8:13-cv-1517-T-36TBM

v.

**KFORCE GOVERNMENT SOLUTIONS, INC.,**
**and KFORCE, INC.,**

        **Defendants.**
_____/

## UNITED STATES' STATEMENT OF INTEREST

The United States files this Statement of Interest to address several issues of general application regarding the False Claims Act, 31 U.S.C. §§ 3729-3733, which are raised by Defendants' Motion to Dismiss (Dkt. 24) and Relator's Response (Dkt. 34) in opposition thereto.[1]

Counts I and II of Relator's Amended Complaint asserts FCA claims as to which the United States is the real party in interest. Counts III, IV, and V of that pleading assert claims entirely personal to Relator. This Statement of Interest is limited to Counts I and II.

---

[1] Having not intervened, the United States is not a party to this litigation; nevertheless, it retains an interest, and under certain circumstances the right to participate, in these proceedings. See, e.g., U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of America, 474 F.Supp.2d 75, 78 n.2 (D.D.C. 2007)(discussing unique status of U.S. in declined *qui tam*); U.S. ex rel. McCready v. Columbia / HCA Healthcare Corp., 251 F. Supp. 2d 114, 119-120 (D.D.C. 2003)(approving of filing of statement of interest by non-party U.S. in declined *qui tam*).

1

I.     **Dismissal With Prejudice**

Defendant's Motion to Dismiss seeks to dismiss Counts I and II based on a number of asserted pleading inadequacies and seeks such dismissal with prejudice; however, Defendants' Motion make no distinction between such a dismissal as to the United States and as to Relator.  See Dkt. 24 at 2, 8, 9 n.5, 16, & 19.

The United States does not address the adequacy of Relator's pleading here,[2] except to request that -- should the Court dismiss the Amended Complaint for a pleading inadequacy -- such dismissal be without prejudice to the United States to avoid harming the United States' continuing interests in this matter. See U.S. ex rel. Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450, 455-56 (5th Cir. 2005) (explaining policy reasons why dismissal of relator on 12(b)(6) and 9(b) grounds should be without prejudice as to the United States).

Pursuant to the False Claims Act, a relator files his or her complaint on behalf of the United States and, once the United States has notified the Court that it declines to pursue relator's allegations, relator is free to pursue them on his or her own.  See 31 U.S.C. § 3730.  Under such circumstances, the United States neither files the complaint that initiated the action nor does it serve the complaint on defendants.  Because the United States has no part in preparing such *qui tam* complaints under the FCA, it should not be prejudiced if a relator

---

[2] As noted above, the United States takes no position on any issues not discussed in this Statement, including whether Relator's Amended Complaint meets the standards of Fed. R. Civ. P. 8(a) or 9(b) or case law interpreting same.

2

has failed to plead his or her allegations sufficiently to meet the requirements of Fed. R. Civ. Proc. 9(b).[3]

Accordingly, where a court grants a defendant's motion to dismiss claims in a *qui tam* action in which, as in this case, the United States has declined to intervene, such dismissals are routinely without prejudice to the United States. See, e.g., Bell Helicopter Textron, Inc., 417 F.3d at 454-56; United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 967 (9th Cir. 1999), cert. denied, 530 U.S. 1203 (2000) (dismissal of relator's complaint on defendant's motion to dismiss was with prejudice to relator and without prejudice to the United States); United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 1000 n.6 (2d Cir. 1995) (affirming dismissal of relator's complaint for failure to comply with the FCA's requirement that qui tam complaints be filed under seal but noting that the Government could proceed with the claims against the defendants if it so chose); United States ex rel. Barrett v. Columbia/HCA Healthcare Corp., 251 F. Supp. 2d 28, 40 (D.D.C. 2003) (granting defendant's motion to dismiss in part with prejudice to the relator but without prejudice to the United States).  Indeed, dismissing the Relator's complaint with prejudice to the United States would harm the United States, as it would provide grounds for a defendant to argue, albeit incorrectly, that such a dismissal precludes future actions by the United States against the defendant.  Such a dismissal would

---

[3] The United States Court of Appeals for the Fifth Circuit has observed that the practice of dismissing claims of the United States with prejudice on the grounds that a relator's complaint is defective would create a perverse incentive for private parties "to file FCA suits lacking in the required particularity, knowing full well that the government would be obligated to intervene and ultimately fill in the blanks of the deficient complaint." Bell Helicopter, 417 F.3d at 455.

therefore fail to accord with the purpose of the False Claims Act *qui tam* provisions, which exist to assist the United States in pursuing fraud.

The preclusive effect of a dismissal with prejudice to the United States is of particular concern where, as here, there has been no adjudication of the merits of the issues and the United States is continuing to investigate the allegations against the defendant.  A decision by the United States not to intervene in a matter does not amount to an admission by the United States that it has suffered no injury.  Bell Helicopter Textron Inc., 417 F.3d at 455 (citing United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala., 104 F.3d 1453, 1458 (4th Cir. 1997). Rather, the FCA allows the United States to decline to intervene for a variety of reasons, and therefore expressly provides the United States with the opportunity to later intervene in a previously declined matter for "good cause."  See 31 U.S.C. § 3730 (c)(3).   In this case, on February 12, 2014, the United States filed its Notice (Dkt. 13) that it was not intervening at this time and would be continuing its investigation.  The United States' investigation is ongoing and it reserves its right to seek leave to intervene in this matter, or file a separate suit, at a later date.

Accordingly, in the event that this Court dismisses Count I and/or Court II of Relator's complaint, for all of the above policy reasons, the United States requests that such dismissal be without prejudice to the United States.

**II.     Dismissal For Failure to File Amended Complaint Under Seal**

Defendants argue that Relator's Amended Complaint should be dismissed because, unlike his original Complaint, the Amended Complaint was not filed in

camera and under seal pursuant to the provisions of 31 U.S.C. § 3730(b)(2). The United States – the party for whose benefit the seal exists – takes the seal provisions seriously, but Defendant's position relies on inapposite case law and does not acknowledge the weight of authority in situations more analogous to the present.

On the former point, as also recognized by Relator, see Dkt. 34 at p.4, the authority which Defendants cite, see Dkt. 24 at 6 n.1 (citing Foster and Pilon), arises from situations in which the relators failed to file their original FCA complaints – or any complaint -- under seal.  See Foster v. Savannah Comm., 140 Fed. Appx. 905, 908 (11th Cir. 2005); U.S. ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 997 (2nd Cir. 1995).

On the latter point, in situations like the present -- where a relator files an original complaint under seal, the U.S. investigates, that Complaint is unsealed, and the relator thereafter files an Amended Complaint not under seal – those Courts to consider the issue have looked to see whether there are material differences between the original Complaint and the Amended Complaint.  See U.S. ex. rel. Saldivar v. Fresenius Medical Care Holds., 972 F. Supp. 2d 1317, 1325-26 (N.D. Ga. 2013)(collecting cases).

In those cases, the weight of authority is clear that whether the Amended Complaint must be filed under seal depends on whether that subsequent pleading asserts new claims or causes of action, adds new parties-Defendant, or otherwise varies materially from the original Complaint, with the ultimate focus being on harm to the Government in the form of being unable to consider any

materially new allegations under seal.  See, e.g., U.S. ex rel. Davis v. Prince, 766 F. Supp. 2d 679, 685 (E.D. Va. 2011).  The United States takes no position on whether Relator's amended complaint meets this standard, or whether dismissal is warranted on such grounds in this case, but asserts that the above is the proper analysis.

### III.     Dismissal Based on Public Disclosure

Defendants argue that Relator's Amended Complaint should be dismissed as his allegations derive from certain unidentified "public communications with the Defense Contract Audit Agency" and also would have been "reflected in invoices submitted to the government throughout 2010 and 2011." Dkt. 24 at 7.  These assertions drastically overstate and misstate the public disclosure bar.

To begin with, as noted in Relator's brief, see Dkt. 34 at 4-5 (citing §3730(4) [sic]), the provisions of 31 U.S.C. § 3730(e)(4) apply where the allegations have been previously disclosed in one of certain enumerated circumstances listed in its sub-sections.  See 31 U.S.C. § 3730(e)(4)(i)-(iii).  Neither the alleged "public communications", nor invoices[4] (which were presumably provided by defendants to DCAA), fall within any of those enumerated categories.

Moreover, even if "public communications with the Defense Contract Audit Agency" and/or invoices submitted to DCAA did constitute public disclosures, which they do not, in order for the public disclosure bar to apply, the Relator's allegations would still have to be "based upon" or "substantially the same as"

---

[4] Additionally, counsel for the United States has been unable to confirm whether invoices provided to DCAA are ever made public, yet alone whether the unidentified invoices in question here were, in fact, publically available.

publically disclosed allegations or transactions - meaning that the alleged public disclosures would have to include sufficient information to publically expose the alleged fraud. See, e.g., United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994)(The public disclosure bar only applies when enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud. Court uses the much followed X+Y=Z formula, where Z represents the allegation of fraud and X and Y represent the true facts and the misrepresentation. Fraud requires recognition of two elements: a misrepresented state of facts and a true state of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud). Neither party addresses whether the unidentified public communications and/or the invoices to DCAA at issue here meet this standard.

    Finally, leaving aside that Defendants fail to identify the specific public disclosures or discuss whether they contain sufficient information to trigger the public disclosure bar, see Dkt. 24 at 7, Defendants' arguments suffer a more fundamental flaw – they would broaden § 3730(e)(4) to the point where virtually no FCA claim could lie. Almost every viable FCA case involves some communication with the United States, and most involve invoices submitted to the Government. And whether fraud is patent or latent in those communications or invoices, the resulting claims submitted to the United States are no less false.

7

## IV.     The Federal Acquisition Regulations

Relator's Response (Dkt. 34) misstates certain of the provisions of, and responsibilities imposed by, the Federal Acquisition Regulations (FAR), which are contained in Title 48 CFR.

Specifically, Relator states that 48 CFR § 42.704(b) "requires that <u>Defendant</u> 'ensure that the billing rates are as close as possible . . . .' " <u>See</u> Dkt. 34 at 8 (emphasis added).  That assertion is incorrect.  Section 42.704(b) reads, in pertinent part, as follows:

> In establishing billing rates, <u>the contracting officer (or cognizant Federal agency official) or auditor</u> should ensure that the billing rates are as close as possible to the final indirect cost rates anticipated for the contractor's fiscal period, as adjusted for any unallowable costs.

(emphasis added).

Also requiring correction is Relator's explanation of how often provisional billing rates need to be revised.  Specifically, in concluding his argument, Relator states as follows:

> And since Provisional Billing Rates must be "as close as possible to the final indirect cost rates," they must also be revised each year.

Dkt. 34 at 8.  The first portion of that sentence (regarding provisional rates being as close as possible to final indirect rates) is a correct – though contextless – statement, while the second portion (regarding an asserted obligation to revise those rates each year) is simply not.

Provisional billing rates may be revised at any time under certain circumstances and must be revised whenever required by the FAR or otherwise necessary and appropriate.  <u>See</u>, <u>e.g.</u>, 48 CFR § 42.704(c) ("Once established,

billing rates may be prospectively or retroactively revised by mutual agreement of the contracting officer (or cognizant Federal agency official) or auditor and the contractor at either party's request, to prevent substantial overpayment or underpayment. When agreement cannot be reached, the billing rates may be unilaterally determined by the contracting officer (or cognizant Federal agency official)."); see also 48 CFR § 52.216-7e.  The above-quoted portion of Relator's brief thus potentially overstates the obligation to revise (by stating that it must be done every year) and potentially understates it (by implying it need only be done once a year).

## V. **Reverse False Claims**

Defendants' Motion and Relator's Response each misstate or confuse certain aspects of so-called "reverse false claims" under the different versions of the FCA.  It is thus first necessary to review how the relevant statutory provision has evolved.

Prior to mid-2009, the False Claims Act had not been substantially amended for some time.  Effective May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. 111-21, made substantial changes to the FCA, some of which are retroactive.  See FERA §4(f).[5]

---

[5] Specifically, for example, changes to § 3729(a)(2) apply to "all claims under the False Claims Act . . . pending on or after [June 7, 2008]."  *See id.* § 4(f)(1). A circuit split has arisen over whether "claims . . . pending," in this context, refers to underlying claims for payment from the government or the legal claims presented in the action itself.  *See, e.g.*, *Sanders v. Allison Engine Co.*, 703 F.3d 930, 940 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2855, 186 L. Ed. 2d 925 (collecting cases on both sides of the split).

In addition to the changing the wording of the key acts and omissions covered by the FCA, FERA also renumbered those sections from 3729(a)(1)-(7) to 3729(a)(1)(A)-(G).

Relevant to the issue of reverse false claims, FERA amended the following section:

> knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

31 U.S.C. § 3729(a)(7), to read as follows:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

31 U.S.C. § 3729(a)(1)(G).

Effective March 23, 2010, the Patient Protection and Affordable Care Act (PPACA), P.L. 111-148, made further changes to the FCA.  However, none of those amendment affected 31 U.S.C. § 3729(a)(1)(G).

Thus, contrary to Relator's assertion, see Dkt. 34 at 9, reverse false claims were not "added" by the FERA amendments of 2009.  Rather, a reverse false claim existed prior to 2009, but required proof that a party knowingly – as defined in the FCA -- made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.  See 31 U.S.C. § 3729(a)(7).

And thus, contrary to Defendants' assertion, see Dkt. 24 at 13, the amendments to 31 U.S.C. § 3729(a)(7) which transformed it into present

10

37291(a)(1)(G) were effected in 2009 by FERA, not in 2010 by PPACA. It was that 2009 amendment which added an additional basis of reverse false claim liability, namely one predicated on knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government. See 31 U.S.C. § 3729(a)(1)(G).

### VI.   False Claims Act Conspiracy Claims

In his Response, Relator's brief suggests that the elements of his FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) be analyzed under Florida law. See Dkt. 34 at 11. While the elements of an FCA conspiracy may be similar to those of a civil conspiracy under Florida law, Federal law establishes the elements of the FCA conspiracy claim. See, e.g., United States ex rel. Valenti v Wingfield et al., Case No. 3:11-cv-368-J-39-MCR, at *12 (M.D. Fla. May 16, 2014); United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc., 597 F. Supp. 2d 1280, 1289(M.D. Fla. 2009).

July 14, 2014                                              Respectfully submitted,

                                                      **A.  LEE BENTLEY**
                                                     United States Attorney

                                                     */s Charles. T. Harden III*
                                                     **CHARLES T. HARDEN III**
                                                   Assistant United States Attorney
                                                   Florida Bar No. 97934
                                                   400 North Tampa Street, Suite 3200
                                                   Tampa, Florida 33602
                                                   Tel: (813) 301-3075
                                                   Fax: (813) 274-6200
                                                   Email: Charles.Harden@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that the foregoing motion was filed with the Clerk utilizing the CM/ECF systems, which will send an electronic notice of filing to the following:

| | |
|---|---|
| Edmund J. Gegan<br>egegan@archerbay.com<br>Archer Bay<br>2639 Dr. MLK Jr., Street North<br>St. Petersburg, FL 33704. | Christopher G. Oprison<br>christopher.oprison@akerman.com<br>Akerman LLP<br>750 Ninth Street, N.W., Suite 750<br>Washington, D.C. 20001<br>Counsel for Defendants (PHV) |

      By:    */s Charles. T. Harden III*
                **CHARLES T. HARDEN III**
                Assistant United States Attorney